# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRIETTA RENTERIA,<br>    Plaintiff,<br>v.<br>NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,<br>    Defendant. | NO. EDCV 16-1612-KS<br><br>MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff Henrietta Renteria ("Plaintiff") filed a Complaint on July 25, 2016, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). (*See* Dkt. No. 1.) On March 14, 2017, the parties filed a "Joint Stipulation" ("Joint Stip.") outlining the disputed issues in the case. (Dkt. No. 19.) Pursuant to 28 U.S.C. § 636(c), all parties have consented to proceed before the undersigned United

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

States Magistrate Judge. (See Dkt. Nos. 11, 12, 13.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On December 17, 2012, Plaintiff filed an application for Title II DIB benefits, alleging a disability onset date of September 3, 2011. (Joint Stip. at 2; *see also* AR 76, 166-69.) Plaintiff was born on November 16, 1962 and was 48 years old on the alleged onset date – that is, a "younger individual" under the applicable regulations. (*See* AR 84, 166); *see also* 20 CFR § 404.1563. At the time of the administrative hearing, Plaintiff was 52 years old and, therefore, considered a person "closely approaching advanced age." (AR 43, 84.) After the Commissioner denied Plaintiff's application initially (AR 49) and on reconsideration (AR 62), a hearing was held before Administrative Law Judge Mark B. Greenberg ("ALJ"). (AR 26-48, 76.) Plaintiff, who was represented by counsel, and Luis Mas, a vocational expert ("VE"), testified at the hearing. (*See* AR 26, 85.) On February 2, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's application for DIB. (AR 76-86.) On May 25, 2016, the Appeals Council denied Plaintiff's request for review. (AR 2-7.)

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five step evaluative process, the ALJ first found that plaintiff had not engaged in substantial gainful activity since September 3, 2011, the alleged onset date. (AR 78.) The ALJ next determined that Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical spine; (2) trigger thumb; (3) arthroscopy of the right shoulder; (4) degenerative joint disease; (5) impingement of the left shoulder; and (6) history of carpal tunnel syndrome. (AR 78.) However, at step three of the sequential evaluation, the ALJ found that Plaintiff's impairments did not meet or equal a listed impairment. (AR 78.)

The ALJ went on to find that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work . . . except the [Plaintiff] can lift, carry, push, and/or pull 15 pounds; she can frequently perform postural activities; she can occasionally climb ladders, ropes or scaffolds; she can occasionally overhead reach; she can frequently reach at or above shoulder level; she must avoid concentrated exposure to hazards; and she can frequently perform gross manipulation with the right upper extremity.

(AR 79.)

The ALJ found at step four that Plaintiff was unable to perform any of her past relevant work. (AR 79.) At step five, the ALJ found that Plaintiff could perform the other work that exists in significant numbers in the national economy, including the following representative occupations: (1) lens gauger (DOT 716.687-030); (2) table worker (DOT 739.687-182); (3) ticket taker (DOT 344.667-010); and (4) swatch clerk (DOT 222.587-050). (AR 85.) Consequently, the ALJ found that Plaintiff had not been under a disability from September 3, 2011, the alleged onset date, through the date of the ALJ's decision on February 2, 2015. (*See* AR 2, 85.)

**DISPUTED ISSUE**

The parties' Joint Stipulation presents a single disputed issue: whether the ALJ properly considered the opinion from Dr. Neil Halbridge, Plaintiff's treating physician, that Plaintiff was precluded from repetitive overhead work bilaterally and, *inter alia*, repetitive work at or above shoulder level. (Joint Stip. at 4 and 7, citing AR 593 and 644.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

### I. Parties' Arguments

The gravamen of the dispute is the difference between the term "frequent," as used in the Social Security disability context, and the term "repetitive," as used by Plaintiff's treating physician, Dr. Halbridge, in the Workers' Compensation context. (*See, e.g.,* Joint Stip. at 4-15.) Plaintiff argues that the January 9, 2014 and August 28, 2014 reports from Dr. Halbridge precluded Plaintiff from repetitive overhead work bilaterally, repetitive work at or above shoulder level, and repetitive gripping and grasping with the right hand. (Joint Stip. at 7, citing AR 593 and 644.) Plaintiff further contends that "repetitive" is a "term of art" in the Workers' Compensation context, and "[a] limitation against repetitive use of the arms and right hand implies a 50% loss of useful function." (Joint Stip. at 7, citing *Schedule for Rating Permanent Disabilities,* pages 1-13 and 2-14 (Dept. Industrial Relations 1977), *available at* http://www.dir.ca.gov/dew/PDR1997.pdf.) Plaintiff argues that the ALJ did not adequately "translate" the "repetitive" term of art, or resolve the conflict between "repetitive," which indicates a "50% function," and the Social Security term "frequent," which contemplates performance for "1/3 to 2/3" of the time, or from roughly 33% to 67% of the time. (*See* Joint Stip. at 7-8.) Thus, there is a potential gap of 17% function (*i.e.,* the difference between 50% and 67%) between actions that are performed "repetitively" in the Workers' Comp context and actions that are performed "frequently" in the Social Security context. (*Id.*) Plaintiff complains that, since each of the four other jobs identified by the VE and relied on by the ALJ require "frequent" reaching and handling, the ALJ did not adequately explain how Plaintiff's "50% repetitive" functioning would satisfy the "frequent" requirements. (Joint Stip. at 8-9 14-15.)

5

In response, Defendant maintains that Dr. Halbridge's January 9, 2014 and August 28, 2014 reports found Plaintiff capable of at least performing "modified work" and, therefore, that "Dr. Halbridge opined that Plaintiff could go back to her work as a caregiver with modified duties." (Joint Stip. at 13, citing AR 644.) Defendant also argues that the ALJ's RFC for Plaintiff incorporates not only Dr. Halbridge's opinion but also the opinions of a consultative examiner and two State agency physicians who "determined that Plaintiff could perform medium work." (Joint Stip. at 12-13, citing AR 56-58, 68-69, 84, 371-72.)

## II. Dr. Halbridge's Reports and Opinions

Plaintiff began seeing Dr. Halbridge, an orthopedist, around November 10, 2011 in connection with her Workers' Compensation claim for her right shoulder injury. (*See, e.g.,* AR 584, 596.) Dr. Halbridge treated Plaintiff from November 10, 2011 through at least August 28, 2014 and issued several reports and numerous treatment notes documenting Plaintiff's condition during that period. (*See, e.g.,* AR 283-365, 584-96, 636-45.) The reports at issue here are Dr. Halbridge's reports dated January 9, 2014 and August 28, 2014. (AR 584-96, 636-45.)

On January 9, 2014, Dr. Halbridge issued a report that stated, in pertinent part, that Plaintiff's work injury had reached "permanent and stationary status" as of the date of the report. (AR 591; *see also* AR 82.) Dr. Halbridge noted that "[t]he patient has been treated with physical therapy, Vicodin, Naprosyn, Flexeril and x-rays and an MRI study of the right shoulder have been performed." (AR 584.) Dr. Halbridge also noted "objective factors of disability" regarding Plaintiff's right and left shoulders:

> Objective factors of disability with regard to the RIGHT shoulder include limitation of motion and the MRI of the RIGHT shoulder on 8/24/11 showing a type II acromion and severe degenerative joint disease acromioclavicular joint,

6

RIGHT shoulder. [¶] Objective factors of disability with regard to the LEFT shoulder include limitation of motion and an MRI of the LEFT shoulder on 9/20/21 showing moderate supraspinatus insertion tendinosis and mild arthrosis acromioclavicular joint, LEFT shoulder.

(AR 591; capitalization in original.)

Dr. Halbridge opined, under a heading "Future Medical Care," that treatment for Plaintiff's right shoulder should include, among other things, NSAIDs, "H2 antagonists," analgesics and injections, but he noted that "no further surgical treatment [is] indicated." (AR 592.) Dr. Halbridge further opined that treatment for the *left* shoulder should also include NSAIDs and analgesics, but that surgical arthroscopy on the left shoulder should also be included. (AR 592.) Under a heading for "Disability Status," Dr. Halbridge wrote "[m]odified work." (AR 592.)

Under "work restrictions," Dr. Halbridge's January 9, 2014 report stated as follows:

1. With regard to the RIGHT shoulder, the patient should have work restrictions of no repetitive overhead work. [¶] 2. With regard to the LEFT shoulder, the patient should have work restrictions of no repetitive work at or above shoulder level. [¶] 3. With regard to the cervical spine, the patient should have work restrictions of no pushing, pulling or lifting of weights greater than 15 pounds. [¶] [And] 4. With regard to the RIGHT thumb, the patient should [have] work restrictions of no repetitive gripping or grasping with the RIGHT hand.

(AR 593; capitalization in original; bracketed material added.)

A subsequent report from Dr. Halbridge dated August 28, 2014 reiterated much of the same findings and opinions set forth in his January 9, 2014 report. (*See* AR 636-45.) That later report included an "Interim History" that stated that Plaintiff "complains of unchanged constant moderate to severe RIGHT shoulder pain causing swelling, clicking, locking, tingling, burning, popping, grinding, stabbing, numbness and tenderness," and noting that Plaintiff "rates pain as an -10/10 on a pain scale." (AR 637; capitalization in original.) The August 28, 2014 report noted slightly decreased flexion in the right and left shoulders since the January 9, 2014 report. (AR 640-41.) Under "Work restrictions," Dr. Halbridge listed three: "1. No pushing, pulling or lifting of weights greater than 15 pounds. 2. *No repetitive work at or above shoulder level.* 3. Regarding RIGHT thumb no repetitive gripping or grasping with the RIGHT hand." (AR 644) (emphasis added) (capitalization in original). Under a heading for "Disability Status," Dr. Halbridge wrote: "Modified work. 8/28/14 (Patient currently not working)." (AR 644.)

### III. ALJ's Opinion

The ALJ stated that he gave "significant weight" to Dr. Halbridge's two opinions from 2014. (AR 83.) The ALJ summarized Dr. Halbridge's findings from the January 9, 2014 and August 28, 2014 reports by stating that Plaintiff "should avoid repetitive overhead work bilaterally; she should avoid pushing, pulling, or lifting greater than 15 pounds; [] she should avoid repetitive gripping or grasping with the right hand; . . . [and she] should not do repetitive work at or above shoulder level." (AR 83, citing AR 593, 644.) The ALJ noted Dr. Halbridge's opinion that Plaintiff was unable to work from November 10, 2011 through April 11, 2013. (AR 83, citing parts of Ex. 3F [*see* AR 282-365].) The ALJ did not, however, explicitly acknowledge or discuss the term "repetitive" as a "term of art" in the Workers' Compensation context. (*See, e.g.,* AR 81-84.)

8

The ALJ went on to find that Dr. Halbridge's opinions were not controlling in the Social Security disability context, stating, in pertinent part, as follows:

> Dr. Halbridge did not provide an explanation of this assessment of any specific functional limitations that prevented the claimant from working. Moreover, he failed to provide acceptable clinical or diagnostic findings to support his broad opinion. It appears that Dr. Halbridge may have based his opinion on the claimant's subjective complaints or was considering only her past work. These opinions concern a matter reserved to the Commissioner, The undersigned has given little weight to this opinion because it is brief, conclusory, and inadequately supported by medical findings. Similarly, throughout the record, Dr. Halbridge also opined the claimant was temporarily totally disabled (Exs. 12F, pp. 5, 96, 105 & 15F, p. 2) for workers compensation purposes; the criteria under the Social Security Act, however, are not the same; and again, disability is a matter reserved for the Commissioner. The objective clinical and diagnostic evidence used by the physician to come to these conclusions and included in the physician's reports has been considered . . . . [W]hile the claimant may not be able to perform her past work, Dr. Halbridge's clinical findings are consistent with a conclusion that the claimant could do work with the limitations noted herein.

(AR 83.)

The ALJ found that Plaintiff could, *inter alia*, "frequently reach at or above shoulder level" and, consequently, could perform jobs that exist in significant numbers in the national economy, *i.e.*, lens gauger, table worker, ticket taker, and swatch clerk. (AR 79, 85.)

\\
\\

## IV. Applicable Law

The parties do not dispute that Dr. Halbridge is a "treating physician" for purposes of Social Security law and regulations. The ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). Generally, the medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *Trevizo v. Berryhill*, 862 F.3d 987, 997 (9th Cir. 2017). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. 20 C.F.R. § 404.1527(c)(2)-(6); *Trevizo*, 862 F.3d at 997.

Ultimately, "[t]o reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997 (internal quotation marks and citation omitted); *Ghanim v. Colvin*, 763 F.3d 1154, 1160-61 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 862 F.3d at 997. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

A treating physician's opinion that a plaintiff is disabled is neither binding nor entitled to "special significance" because it is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1504 ("[A] determination made by another agency that you are disabled or blind is not binding on us."); 20 C.F.R. § 404.1527 (medical source opinions that a claimant is disabled or unable to work are not entitled to "special significance" because they are "opinions on issues reserved to the Commissioner"). Nevertheless, an ALJ must consider all of the medical findings and evidence, *see* 20 C.F.R. § 404.1527(c), and "may not disregard a physician's opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

## V. <u>Analysis</u>

The ALJ stated that he assigned significant weight to Dr. Halbridge's opinion, but he discounted, without addressing, Dr. Dr. Halbridge's opinion that Plaintiff should not do repetitive work at or above shoulder level or repetitive overhead work bilaterally. Instead, the ALJ determined that Plaintiff is capable of "frequently reach[ing] at or above shoulder level," with "frequently" defined as occurring "from 1/3 to 2/3 of the time." "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it . . . or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13; *see also Echaury v. Astrue*, No. CV 12-1245 FMO, 2013 WL 436007, at *4-5 (C.D. Cal. Feb. 4, 2013) (ALJ's failure to include all functional limitations found by treating workers' comp physician constitutes "implicit" rejection of treating physician's opinion). Because the ALJ ignored Dr. Halbridge's opinion that Plaintiff should not do repetitive work at or above shoulder level or repetitive overhead work bilaterally, the ALJ erred.

Numerous cases from within the Ninth Circuit have found that the term "repetitive" is a "term of art" in the California Workers' Compensation scheme indicating a 50% loss of function and held that the ALJ must address and incorporate the meaning of the term "repetitive" in a Social Security disability opinion. *See, e.g., Haro v. Colvin,* No. CV 13-09319-JEM, 2014 WL 4929032, at *6 (C.D. Cal. Sept. 30, 2014) (California Worker's Comp Schedule establishes that "repetitive" means "50% or more loss of the ability to reach, push, or pull); *see also Booth,* 181 F. Supp. 2d at 1103-06 (discussing analysis of workers' comp doctor's use of term "repetitive"); *see also Vasquez-Pamplona v. Colvin*, No. CV 14-7284 JC, 2015 WL 5796994, at *4 (C.D. Cal. Sept. 30, 2015) ("repetitive" is "term of art" used in California Worker's Comp scheme); *Valero v. Colvin*, No. 1:13-CV-01815-SKO, 2015 WL 1201874, at *10 (E.D. Cal. Mar. 16, 2015) (same); *Harvey v. Colvin*, No. CV 13-5376-PLA, 2014 WL 3845088, at *6 (C.D. Cal. Aug. 5, 2014) (same). "While the ALJ's decision need not contain an explicit 'translation,' it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." *Booth,* 181 F. Supp. 2d at 1106. As stated above, the ALJ did not do so here but, rather, either ignored Dr. Halbridge's use of the term "repetitive".

The ALJ's error is not harmless. According to the DOT, all four of the jobs that the ALJ found Plaintiff could perform involve "frequent" reaching, handling, and fingering, with "frequent" defined as occurring "from 1/3 to 2/3 of the time." *See* DOT 716.687-030 (lens gauger), 739.687-182 (table worker), 344.667-010 (ticket taker), 222.587-050 (swatch clerk). Further, the ALJ did not posit a hypothetical to the VE for reaching or overhead function with a limit of "up to 50% of the time." Accordingly, the ALJ's error in evaluating Dr. Halbridge's opinion is not necessarily inconsequential to the ultimate nondisability determination and the matter must be remanded.

## VI. Remand For Further Proceedings Is Warranted

This matter is not appropriate for a remand for an award of benefits because it is not clear from the record that, if the ALJ credited Dr. Halbridge's opinion in full, he would be required to find Plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also id.* n.26. Accordingly, the Court remands for further development of the record where appropriate and proper consideration of Dr. Halbridge's opinion.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: September 7, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE